# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

ASHLEY DIAMOND,

                     Plaintiff,

        v.

ARNEIKA SMITH,

                  Defendant.

No. 5:21-cv-00378-MTT

**PLAINTIFF'S OPPOSITION TO DEFENDANT ARNEIKA SMITH'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................. 1

LEGAL STANDARD ........................................................................................... 2

ARGUMENT ........................................................................................................ 2

I.    Defendant is Not Entitled to Qualified Immunity Because She Was Not Acting Within the Scope of Her Discretionary Authority and She Violated Clearly Established Constitutional Rights .................................................... 2

    A.    Defendant Has Failed to Meet Her Burden to Show that She Was Acting Within the Scope of Her Discretionary Authority ............................... 3

    B.    A Reasonable Jury Could Find that Defendant Violated a Clearly Established Eighth Amendment Constitutional Right ..................................... 6

        1.    Defendant's Conduct Violated the Eighth Amendment ..................... 7

        2.    The Constitutional Right Was Clearly Established at the Time of Defendant's Misconduct ................................................................. 9

    C.    A Reasonable Jury Could Find that Defendant Violated a Clearly Established Fourteenth Amendment Constitutional Right ............................ 10

II.    Ms. Diamond's Request for Compensatory Damages Comports with the PLRA .......................................................................................................... 12

    A.    The Physical Injury Requirement is Not an Affirmative Defense ................. 12

    B.    Plaintiff Has Suffered Physical Injury Under the PLRA ............................... 13

    C.    The PLRA Does Not Require Physical Injury for the Constitutional Violation of Invasion of Bodily Privacy ...................................................... 15

CONCLUSION ................................................................................................... 16

CERTIFICATE OF SERVICE ........................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..............................................................................................2, 15

*Arauz v. Bell*,
   307 F. App'x. 923 (6th Cir. 2009) ....................................................................13, 14

*Aref v. Lynch*,
   833 F.3d 242 (D.C. Cir. 2016) .........................................................................15, 16

*Barker v. Norman*,
   651 F.2d 1107 (5th Cir. Unit A July 1981)............................................................3, 4

*Boxer X v. Harris*,
   437 F.3d 1107 (11th Cir. 2006) ....................................................................9, 10, 11

*Brooks v. Warden*,
   800 F.3d 1295 (11th Cir. 2015) ...............................................................................12

*Coffin v. Brandau*,
   642 F.3d 999 (11th Cir. 2011) ...................................................................................6

*Courson v. McMillian*,
   939 F.2d 1479 (11th Cir. 1991) .................................................................................3

*DeJesus v. Lewis*,
   14 F.4th 1182 (11th Cir. 2021) .................................................................7, 8, 9, 10

*Diamond v. Owens*,
   131 F. Supp. 3d 1346 (M.D. Ga. 2015) .................................................................2, 6

*Estate of Cummings v. Davenport*,
   906 F.3d 934 (11th Cir. 2018) ........................................................................2, 3, 4, 6

*Fortner v. Thomas*,
   983 F.2d 1024 (11th Cir. 1993) .........................................................................10, 11

*Habeebullah v. Crawford*,
   No. 08–4063–CV–C–NKL, 2011 WL 2458060 (W.D. Mo. June 17, 2011)..........................14

*Harbert Int'l, Inc. v. James*,
   157 F.3d 1271 (11th Cir. 1998) .................................................................................3

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ........................................................................................2

*Holloman ex rel. Holloman v. Harland,*
    370 F.3d 1252 (11th Cir. 2004) .....................................................................3

*Hoever v. Marks,*
    993 F.3d 1353 (11th Cir. 2021) (en banc) ...............................12, 13, 15

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ................................................................................6, 10

*Khoury v. Miami-Dade Cnty. Sch. Bd.,*
    4 F.4th 1118 (11th Cir. 2021) .......................................................................3

*Lewis v. City of W. Palm Beach,*
    561 F.3d 1288 (11th Cir. 2009) ..............................................................2, 3

*Reed v. Mohr,*
    No. 2:19-cv-738, 2019 WL 3430803 (S.D. Ohio July 30, 2019) ...........14

*Sconiers v. Lockhart,*
    946 F.3d 1256 (11th Cir. 2020) .........................................................7, 9, 10

*Sec'y, Fla. Dep't of Corrs.,*
    F. App'x 555 (11th Cir. 2014) (per curiam) ...........................................14

*Sherrod v. Johnson,*
    667 F.3d 1359 (11th Cir. 2012) .....................................................................2

*Stees v. Guard, Me. State Prison,*
    No. 1:14–cv–00133–GZS, 2015 WL 786919 (D. Me. Jan. 26, 2015) ......14

*Terrell v. Smith,*
    668 F.3d 1244 (11th Cir. 2012) .....................................................................6

*Uzuegbunam v. Preczewski,*
    141 S. Ct. 792 (2021) ...................................................................................12

*Wilkins v. Gaddy,*
    559 U.S. 34 (2010) .................................................................................9, 10

**Rules**

Fed. R. Civ. P. 56(a) ...........................................................................................2

**Statutes**

Ga. Code Ann. § 16–6–5.1 (West 2022) ............................................................................4

Ga. Code Ann. § 16–6–22.1 (West 2021) ..........................................................................4

Ga. Comp. R. & Regs. 125-2-1-.07(d) (2022) .............................................................4, 5

# INTRODUCTION

This lawsuit concerns Plaintiff Ashley Diamond's serious allegations of sexual abuse against Defendant Arneika Smith, a former corrections officer with the Georgia Department of Corrections (GDC) who abused her position of power by locking Ms. Diamond in an officer closet and subjecting her to sexual abuse, harassment, and coercion for several hours on two consecutive days. Def.'s Statement of Material Facts, ECF No. 126-2, ¶¶ 1-15, 17. The incidents of sexual misconduct that Ms. Diamond experienced at the hands of Defendant are simply not "harmless, childish actions," as Defendant asserts. Def.'s Summ. J. Br., ECF No. 126-1, at 12. Rather, they are serious violations of Ms. Diamond's clearly established constitutional rights. In addition, the sexual abuse Ms. Diamond experienced caused her physical injury as well as mental anguish—ultimately precipitating an attempt at suicide and self-harm. Accordingly, Ms. Diamond's Complaint and the evidence amassed in this matter support her allegations that Defendant violated Ms. Diamond's right to be free of sexual abuse, coercion, and voyeurism at the hands of corrections officials under the Eighth and Fourteenth Amendments and entitle her to compensatory, punitive, and nominal damages.

In response, Defendant argues only two points: that she is entitled to qualified immunity and that Ms. Diamond has not met the requirements of the Prison Litigation Reform Act (PLRA). But qualified immunity does not apply here because Defendant was acting outside the scope of her discretionary authority. Even if she was performing a discretionary function, she violated Ms. Diamond's clearly established constitutional rights under the Eighth and Fourteenth Amendments. Further, Ms. Diamond's suit complies with the PLRA because she has suffered a physical injury as a result of Defendant's actions and because Defendant violated Ms. Diamond's right to privacy, for which there is no physical injury requirement. The law also clearly allows the award of both punitive and nominal damages. Because a reasonable jury could find for

1

Ms. Diamond, Defendant Arneika Smith's Motion for Summary Judgment should be denied.

## LEGAL STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). A fact is material if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## ARGUMENT

**I.    Defendant is Not Entitled to Qualified Immunity Because She Was Not Acting Within the Scope of Her Discretionary Authority and She Violated Clearly Established Constitutional Rights**

Defendant claims the shield of qualified immunity. Yet qualified immunity only applies when individual public officials, in performing discretionary functions, do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The defendant bears the initial burden of showing that she was acting within the scope of her discretionary authority. *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). Once discretionary authority is established, the burden shifts to the plaintiff to show that qualified immunity should not apply. *Id*. To meet this burden, the plaintiff must establish (1) that the officer's conduct amounted to a constitutional violation, and (2) that the right violated was clearly established at the time of the violation. *Diamond v. Owens (Diamond I)*, 131 F. Supp. 3d 1346, 1370 (M.D. Ga. 2015) (citing *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th

Cir. 2009)).

Here, as set out below, Defendant is not entitled to qualified immunity because she has failed to show that she was acting within the scope of her discretionary authority and because the constitutional rights at issue were clearly established.

### A.     Defendant Has Failed to Meet Her Burden to Show that She Was Acting Within the Scope of Her Discretionary Authority

Defendant fails to meet her burden to show that she was acting within the scope of her discretionary authority. To assert a qualified immunity defense, "a government official must first establish that [s]he was acting within [her] discretionary authority at the time of the challenged conduct." *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1125 (11th Cir. 2021) (citation omitted); *see also Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (citation omitted). A defendant must show that her actions were "(1) undertaken pursuant to the performance of [her] duties, and (2) within the scope of [her] authority." *Estate of Cummings*, 906 F.3d at 940 (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). The court must ask whether the government employee was "performing a legitimate job-related function" or "pursuing a job-related goal [] through means that were within [her] power to utilize." *Id.* (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). Courts look to state law in determining the scope of an officer's discretionary authority. *Id*.

Defendant cites no state law or evidence—let alone undisputed facts—to show that she was acting within the scope of her discretionary authority. Rather, Defendant claims that there is "no genuine dispute that Defendant was acting within her discretionary capacity in this case." ECF No. 126-1 at 7. Such a "bald assertion by the defendant that the complained-of actions were . . . within the scope of [her] discretionary authority" is insufficient to meet Defendant's burden. *See Estate of Cummings*, 906 F.3d at 940 (quoting *Barker v. Norman*, 651 F.2d 1107, 1124-25 (5th Cir. Unit

A July 1981)).

In fact, contrary to Defendant's claim, Ms. Diamond disputes that Defendant was acting within her discretionary capacity as a correctional officer when she engaged in prohibited sexual abuse of an incarcerated person over the course of two days, abandoned her post, and violated prison rules in a manner that led to her termination. *See* Ex. 1 (Smith Dep. Tr.) at 24:22-24, 25:22-24, 39:6-8; Ex. 9, DEF_038609-16 (A. Smith Personnel File: Termination Notification Information). Such conduct was not in furtherance of a legitimate job-related function of a correctional officer. In fact, GDC's Prison Rape Elimination Act (PREA) Policy imposes "a zero-tolerance policy toward all forms of sexual abuse [and] [s]exual [h]arassment." Ex. 3 (GDC PREA Policy) at DEF_1362. GDC policy requires that a correctional officer who commits sexual misconduct "be subject to disciplinary action, up to and including termination and banishment from all Georgia correctional institutions" and criminal prosecution. *Id*. at DEF_1367. *See also* Ex. 6, DEF_674 (A. Smith Personnel File: PREA Education Acknowledgement Form) and Ex. 13, DEF_665 (A. Smith Employee Standards of Conduct Acknowledgment).Moreover, Georgia law prohibits sexual abuse and harassment, as well as personal or intimate relationships between a correctional officer and an incarcerated person. *See* Ga. Code Ann. § 16–6–5.1 (West 2022) (defining the criminal offense of "improper sexual contact" as "any contact involving the intimate parts of either person for the purpose of sexual gratification of either person" by a correctional officer with a person "[i]n the custody of a correctional facility . . . of which he or she is an employee or agent"); Ga. Code Ann. § 16–6–22.1 (West 2021) (defining the criminal offense of "sexual battery" as when a person "intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person."). *See also* Ga. Comp. R. & Regs.

125-2-1-.07(d) (2022), Performance of Duty[1] ("Employees shall not, without the express written approval of the appropriate Division Director, maintain personal association with . . . known inmates"); Ex. 4 ███████████████████ at ██████████████████████████ ████████████████ .

Here, the undisputed facts establish that Defendant locked Ms. Diamond in a room twice in two days, used her position of authority to coerce Ms. Diamond into a discussion about her genitalia, stroked Ms. Diamond's inner thighs and buttocks, exposed herself to Ms. Diamond, and ordered that Ms. Diamond exhibit her own breasts and genitalia. *See* ECF No. 126-2. Such conduct was not within Defendant's responsibilities as a correctional officer. *See supra and* Ex. 5 (Ridley Dep. Tr.) at 34:14-16 (GDC correctional officer testifying that Defendant's duties were the same as his own: "Supervise inmates. Control count. Record any activity that goes on. Things of that such."). Officer Ridley testified in his deposition that it was against prison rules for a correctional officer to bring an incarcerated person into the officer closet, where the events at issue took place. *See* Ex. 5 (Ridley Dep. Tr.) at 50:15-17 ("I mean, it's just strange to me, and against policy, to have an inmate in a[n] officer closet. That's just one thing you don't do."); Ex. 5 (Ridley Dep. Tr.) at 102:22-24 ("[T]hat's something you don't do as a[n] officer, any officer working any unit at GDCP. It go[es] against policy – policy big time."). In fact, as explained above, Defendant's actions were not only outside the scope of her authority, but a violation of policy and law.

Defendant was aware of GDC's policy and Georgia law's prohibition on sexual abuse. *See* Ex. 1 (Smith Dep. Tr.) 93:25-94:2 (Q: "It was against the rules to touch offenders, right? A: Yes, ma'am."); Ex. 13, DEF_665 (A. Smith Employee Standards of Conduct Acknowledgment); Ex. 6,

---

[1] Ga. Comp. R. & Regs. 125-2-1-.07 (2022), *available at* http://rules.sos.state.ga.us/gac/125-2-1.

DEF_674 (A. Smith Personnel File: PREA Education Acknowledgment Form) (statement signed by Defendant acknowledging GDC's "zero-tolerance for sexual abuse of offenders," prohibition on "engag[ing] in any behavior of a sexual nature with an offender," authorization for her entry into prisons being contingent on her agreement to comply with GDC's policy on sexual abuse and harassment, and the possibility of disciplinary action as well as criminal prosecution for sexual misconduct). The sexual misconduct at issue was serious enough to warrant an investigation by the Office of Professional Standards (OPS). Ex. 7, DEF_571 (OPS Investigative Case Summary).

Qualified immunity does not protect "the plainly incompetent or those who knowingly violate the law." *Estate of Cummings*, 906 F.3d at 940 (quotation omitted). Since Defendant's actions cannot reasonably be described as within the scope of a correctional officer's discretionary authority, qualified immunity does not apply.

**B.    A Reasonable Jury Could Find that Defendant Violated a Clearly Established Eighth Amendment Constitutional Right**

Clearly established law means that a defendant had "fair warning" that her conduct deprived the plaintiff of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 740–41 (2002). There need not be, however, a case with the precise factual scenario as the allegations to which a defendant seeks qualified immunity to show that the constitutional violation was clearly established. *Id.* at 741; *see also Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) ("Exact factual identity with a previously decided case is not required."). A plaintiff "can demonstrate that the contours of the right were clearly established in several ways." *Diamond I*, 131 F. Supp. 3d at 1370–71 (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012)). Ms. Diamond can show that "a materially similar case has already been decided," that a "broader, clearly established principle [] should control the novel facts [of the] situation," or that "the conduct involved in the case may 'so obviously violate[] th[e] constitution that prior case law is unnecessary.'" *Id.* at 1371.

6

Even if Defendant were found to have been acting within her authority—which she was not—she would still not be protected by qualified immunity because established law has provided a clear directive that prison officials may not engage in sexual assault against incarcerated people without violating the Constitution. The Eleventh Circuit has "recognized that sexual assault can never serve any valid penological purpose and is malicious and sadistic such that a sexual assault satisfies the subjective component of an Eighth Amendment claim." *DeJesus v. Lewis*, 14 F.4th 1182, 1198 (11th Cir. 2021) (citing *Sconiers v. Lockhart*, 946 F.3d 1256, 1259, 1266 (11th Cir. 2020)). As shown below, the sexual abuse at issue falls within the ambit of constitutional prohibition and, therefore, would allow a reasonable jury to return a verdict in favor of Ms. Diamond.

### 1.     Defendant's Conduct Violated the Eighth Amendment

Sexual assault of an incarcerated person by a prison official violates the Eighth Amendment and is defined as occurring whenever "the prison official, acting under color of law and without legitimate penological justification, engages in a sexual act with the prisoner, and that act was for the official's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *DeJesus*, 14 F.4th at 1196.

Defendant mischaracterizes Eleventh Circuit law as requiring "severe repetitive abuse" to state a constitutional violation. ECF No. 126-1 at 8. *See Sconiers*, 946 F.3d at 1267. Rather, a range of conduct constitutes sexual assault under the Eighth Amendment. At a minimum, sexual assault includes "intentional sexualized touching underneath clothing, such as fondling or penetration; coerced sexual activity; combinations of ongoing harassment and abuse; and exchanges of sexual activity for special treatment or to avoid discipline." *DeJesus*, 14 F.4th at 1196-97 (citing *Sconiers*, 946 F.3d at 1266)). Here, Defendant perpetrated a combination of ongoing harassment and abuse when she locked Ms. Diamond in a room, interrogated Ms. Diamond about her genitalia, stroked

her inner thighs and buttocks, exposed herself, and coerced Ms. Diamond to exhibit her genitalia, all of which was for Defendant's sexual gratification and had no penological justification. ECF No. 126-2; Ex. 1 (A. Smith Dep. Tr.) at 33:11-15; 90:10-20; 91:14-15, 19-22; 102:6-103:23; Ex. 5 (Ridley Dep. Tr.) at 102:22-24; Ex. 6, DEF_674 (A. Smith Personnel File: PREA Education Acknowledgment Form); Ex. 8 ██████████████████████ at ████████████████████ ██████████████████████████████████; Ex. 4 ████████████████ ██ at ████████████████████████████████████████; Ex. 7, DEF_571 (GDC OPS Investigative Case Summary) (confirming A. Smith violated rule); Ex. 9 (A. Smith Personnel File: Termination Notification Information) at DEF_038609-14 (showing Defendant was terminated for violating C Cellhouse orders following a Legal Services Investigation, with a "No Rehire Code" on her record).

Defendant's reliance on *DeJesus* as a defense because the sexualized touching and fondling occurred while clothed avoids the Eleventh Circuit's recognition that sexual assault may also include "clothed sexualized touching" as determined "on a case-by-case basis." *DeJesus*, 14 F.4th at 1196 n.12. Whether Defendant's stroking Ms. Diamond's buttocks and inner thighs is sexual assault under the Eighth Amendment is for a jury to decide. *See id.* at 1197 ("Such determinations are for the finders of fact to decide in the first instance." (citation omitted)). In making this determination, the jury may consider "whether the alleged conduct is of a sexual nature; whether the alleged sexual assault did in fact occur; and whether the prison official intended to sexually gratify [herself] or acted for the purpose of humiliating, degrading or demeaning the prisoner." *Id.* Here, there is sufficient evidence for a jury to reasonably conclude that Defendant engaged in sexual assault because the events in question were sexual in nature, as demonstrated by Defendant questioning Ms. Diamond on her sexual preferences and genitalia, as well as the fact that the sexual

assault occurred through a combination of repeated sexual harassment and unwanted touching on Ms. Diamond's inner thighs and buttocks. Further, a jury could reasonably conclude that Defendant, knowing Ms. Diamond to be a transgender woman yet ordering her to expose her genitalia without any legitimate penological reason, acted either for her own gratification or for the purpose of humiliating, degrading, or demeaning Ms. Diamond.

### 2.   The Constitutional Right Was Clearly Established at the Time of Defendant's Misconduct

Defendant had fair warning that her conduct violated the Eighth Amendment based on the Eleventh Circuit directive that sexual assault can never serve a valid penological purpose and is malicious and sadistic such that it is sufficient for an Eighth Amendment claim. *See Sconiers*, 946 F.3d at 1266; *see also Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010); *DeJesus*, 14 F.4th at 1198 ("*Sconiers* and *Wilkins* make sexual assault an Eighth Amendment violation in the Eleventh Circuit."). In arguing otherwise, Defendants mistakenly rely on a "long line of legal precedent," ECF No. 126-1 at 10, that was abrogated by the Eleventh Circuit in *Sconiers v. Lockhart*, decided five months before Defendant's misconduct. 946 F.3d at 1267 ("[W]e must now retire the abrogated portion of *Boxer X*. The lack of serious physical injury, considered in a vacuum, cannot snuff out Eighth Amendment sexual-assault claims.").

In *Sconiers*, the Eleventh Circuit set out four principles "that apply in any case involving the sexual assault of a prisoner by a prison official" and provided fair warning that sexual conduct of any kind, including Defendant's conduct, is a violation of the Eighth Amendment. *DeJesus*, 14 F.4th at 1195. The *Sconiers* principles are: (1) that "sexual assault can never serve any valid penological purpose," (2) that "sexual assault is a malicious and sadistic action that satisfies the subjective component of an Eighth Amendment claim," (3) that "sexual assault is never acceptable under contemporary standards of decency, which matters for purposes of satisfying the objective

9

component," and (4) that the court should "look at the 'nature' of the force used," and that "harm from a sexual assault is inherently not de minimis." *DeJesus*, 14 F.4th at 1195-96 (citing *Sconiers*, 946 F.3d at 1259, 1266–67). These broad, clearly established principles are sufficient to provide Defendant notice that her conduct—repeatedly harassing Ms. Diamond about her genitalia, stroking Ms. Diamond's inner thighs and buttocks, exposing herself to Ms. Diamond, and ordering Ms. Diamond to show her her genitalia—constituted sexual assault and therefore was unconstitutional. *See Hope*, 536 U.S. at 741 (explaining that a "general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question" (quotation omitted)).

### C.  A Reasonable Jury Could Find that Defendant Violated a Clearly Established Fourteenth Amendment Constitutional Right

The constitutional right to bodily privacy for incarcerated people has been clearly established in the Eleventh Circuit. *See Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993); *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006), *abrogated on other grounds*, *Wilkins*, 559 U.S. at 39 ("We have reaffirmed the privacy rights of prisoners emphasizing the harm of compelled nudity."). *Fortner* explained that most people, including those who are incarcerated, maintain a "special sense of privacy in their genitals, and involuntary exposure of them . . . may be especially demeaning and humiliating." 983 F.2d at 1030 (quotation omitted).

Here, Ms. Diamond's claim is clearly within the scope of the right established in *Fortner*. Plaintiff is a transgender woman who struggles to even think about her genitalia, let alone expose herself for Defendant's viewing. *See* ECF No. 105 at 177:9–177:12 (Diamond) ("I want to say that that's a part of my body that I don't acknowledge. That I do not get along with at all. It's not something that I would even want to see or have anyone else look at or touch. I don't want it there."). Yet, Defendant ordered Ms. Diamond to expose her breasts and genitalia without any

legitimate reason. *See* Ex. 3 at DEF_1371 (GDC PREA Policy) (stating that "[t]he facility shall not search or physically examine a Transgender . . . offender for the sole purpose of determining the offender's genital status."). Ms. Diamond testified in her deposition that she felt she did not have a choice but to comply with the order of a correctional officer. *See* Ex. 2 (Diamond Dep. Tr.) at 163:25–164:3 (Q: "[W]hat led up to going into the room? A: She's my superior, and she told me to go into the room."); 239:8–9 ("I did exactly as she told me to do in every instance."). Such conduct is sufficient to show the harm to Ms. Diamond through compelled nudity.

Defendant relies on factual assertions that are irrelevant to whether Defendant violated Plaintiff's constitutional right to bodily privacy. The Eleventh Circuit articulates no requirement that the compelled nudity be "physically forced," involve "sexual activity such as masturbation," or a "prolonged public display."[2] ECF No. 126-1 at 11. *See Fortner*, 983 F.2d at 1027 (finding violation of constitutional right to bodily privacy based on conduct that included soliciting incarcerated people to "exhibit their genitals for the female officers' viewing"); *Boxer X*, 437 F.3d at 1111 (finding claim that officer solicited an incarcerated man to masturbate in his jail cell to be "clearly within the scope of the right established in *Fortner*"). To minimize such conduct as "harmless" or "childish," ECF No. 126-1 at 12, is to ignore the extreme power differential between an incarcerated individual and a guard within a correctional setting. Defendant's actions were an

---

[2] Indeed, Defendant's reading of the law would encourage correctional officers to be creative in order to constitutionally engage in a range of degrading, humiliating, and sexually abusive practices by using their positions of authority to, as examples, touch inmates in and around their genitals with hands or tongues, avoiding only "penetration" and "forced masturbation"; require inmates to undress and assume whatever sexual position the officer requested; and sexually abuse inmates on an occasional, daily or weekly basis without any legitimate or penological basis— limited only by the need to avoid "physical" force (allowing coercion, threats of disciplinary reports, withholding access to food, toiletries, bathrooms, showers, yard time, etc.) or "prolonged public displays" (allowing such abuses to be acceptable if they take place, as here, in a locked windowless room, bathroom stall, unoccupied cell, etc.).

abuse of that power, sexual misconduct, and an invasion of Ms. Diamond's constitutional right to bodily privacy.

## II.    Ms. Diamond's Request for Compensatory Damages Comports with the PLRA

### A.    The Physical Injury Requirement is Not an Affirmative Defense

Defendant argues that Ms. Diamond's claim for compensatory damages should be dismissed because the injuries Ms. Diamond suffered as a result of her suicide attempts and compulsion to self-harm are not sufficient to fulfill the requirement of a physical injury for purposes of the PLRA.

As a preliminary matter, the PLRA physical injury requirement is not a defense to liability in this action; at best, it serves to limit the types of monetary damages that plaintiffs are able to recover. *See Hoever v. Marks*, 993 F.3d 1353, 1358 (11th Cir. 2021) (en banc). Indeed, as the Eleventh Circuit held sitting en banc in *Hoever*, "the text of § 1997e(e) bars only requests for compensatory damages stemming from purely mental or emotional harms. Understood properly, then, § 1997e(e) does not bar punitive damages in the absence of physical injury." 993 F.3d at 1358. The court affirmed that the same rule applies to nominal damages claims. *Id.* at 1361 ("[T]he rule in this circuit is that § 1997e(e) does not bar prisoners from seeking nominal damages because a 'nominal damages claim is not brought <u>for</u> mental or emotional injury.'" (quoting *Brooks v. Warden*, 800 F.3d 1295, 1308 (11th Cir. 2015)).[3]

---

[3] The Court also explained the rationale for that distinction between compensatory damages, on one hand, and nominal and punitive damages on the other: "Punitive damages do not compensate plaintiffs for injuries suffered. Rather, their purpose 'is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior.'" *Hoever*, 993 F.3d at 1358-59 (internal citations and quotations omitted). Similarly, the Court recognized that nominal damages are "designed to vindicate the deprivation of a plaintiff's constitutional rights," based on Circuit as well as Supreme Court precedents. *Id.* at 1361 (citing *Brooks*, 800 F.3d at 1308 and *Uzuegbunam v. Preczewski*, ⸺ U.S. ⸺, 141 S. Ct. 792, 800, 802 (2021)). As such, even if Ms. Diamond is unable to demonstrate a physical injury, it would not preclude her suit as she

Defendant herself concedes that any bar to Ms. Diamond's suit on the basis of failure to show a physical injury would apply only to Ms. Diamond's claim for compensatory relief. ECF No. 126-1 at 12 ("Absent allegations that a defendant's actions are related to a physical injury or a sexual act, a plaintiff cannot obtain compensatory relief."). Implicit in this concession is that Ms. Diamond's claims for nominal and punitive damages can proceed regardless of whether there is any physical injury. As such, summary judgment is not warranted because, in addition to having a viable claim for compensatory damages as set forth below, Ms. Diamond's claim for nominal and punitive damages remains viable whether or not she can make a showing of physical injury, and thus must survive Defendant's Motion.

**B.  Plaintiff Has Suffered Physical Injury Under the PLRA**

Ms. Diamond's compensatory, punitive, and nominal damages claims against Defendant all remain viable because Ms. Diamond suffered a physical injury following Defendant's sexual abuse—specifically, she attempted suicide and felt compelled to engage in self-harm. *See* Ex. 2 (Diamond Dep. Tr.) at 228:8-229:19; Ex. 10 (Health Services Request Form) at DEF004785; Ex. 11 (Email re: Weekly Report) at DEF004811.

As Defendant concedes, "the Eleventh Circuit has not yet addressed whether injuries of a self-inflicted nature . . . are sufficient to establish more than *de minimis* injuries for PLRA purposes"—specifically, the physical injury requirement. (ECF No. 126-1 at 15.) However, numerous courts have found self-harm to satisfy the physical injury requirement of the PLRA. *See, e.g.*, *Arauz v. Bell*, 307 F. App'x. 923, 929 (6th Cir. 2009) (concluding that statement that plaintiff attempted suicide satisfied PLRA requirement because "[b]y definition, attempting suicide

---

would still be able to recover nominal damages and punitive damages from Defendant Smith. *Id.* at 1361 ("As with nominal damages, 'punitive damages may be recovered for constitutional violations without a showing of compensable injury.'" (internal citations and quotations omitted)).

involves hurting oneself, and we can presume the existence of some physical injury from [plaintiff]'s statement that he attempted to commit suicide"); *Reed v. Mohr*, No. 2:19-cv-738, 2019 WL 3430803, at *3 (S.D. Ohio July 30, 2019), *report & recommendation adopted*, 2019 WL 5157005 (Oct. 15, 2019) ("[a]ttempting suicide . . . meets the PLRA's physical injury requirement"); *Stees v. Guard, Me. State Prison*, No. 1:14–cv–00133–GZS, 2015 WL 786919, at *2 (D. Me. Jan. 26, 2015), *report & recommendation adopted*, 2015 WL 790034 (Feb. 25, 2015) ("Plaintiff's alleged attempted suicide thus satisfies the physical injury requirement of section 1997e(e)"); *Habeebullah v. Crawford*, No. 08–4063–CV–C–NKL, 2011 WL 2458060, at *5 (W.D. Mo. June 17, 2011) ("Plaintiff has attempted suicide on multiple occasions after Defendants committed the alleged misconduct. The Court notes that suicide attempts can satisfy the physical injury requirement." (citations omitted)).

Moreover, the bar for what constitutes *de minimis* injury is not high. In *Thompson v. Secretary, Florida Department of Corrections*, a prisoner alleged that the prison diet "caused him to suffer from headaches, weakness, cold sweats, dizziness, weight loss, numbness in his left arm, and high blood sugar that caused fainting." 551 F. App'x 555, 556 (11th Cir. 2014) (per curiam). The Eleventh Circuit found that the district court had "erred in determining that Thompson had alleged only *de minimis* physical harm." *Id.* at 557. The court stated that Thompson had alleged "continuing severe physical pain and other symptoms that persisted for an extended period of time and required medical treatment," and noted that, while that harm might "perhaps not [be] significant, the physical injury that Thompson alleged rose above the *de minimis* threshold." *Id.*

Here, Ms. Diamond has alleged that, as a result of Defendant's sexual abuse, Ms. Diamond became suicidal, attempted to kill herself, and was compelled to self-harm. Ex. 2 (Diamond Dep.

14

Tr.) at 228:8-229:19; Ex. 10 (Health Services Request Form) at DEF004785; Ex. 11 (Email re: Weekly Report) at DEF004811. Such self-inflicted injuries satisfy the physical injury requirement of the PLRA, as discussed above, and are more than *de minimis*. And while Defendant claims that "other than Plaintiff's self-serving allegations, there is no evidence that Plaintiff ever injured herself," ECF No. 126-1 at 17, that argument is unavailing. First, Ms. Diamond testified, and documents corroborate, that she attempted suicide as a result of Defendant's sexual abuse and was placed on suicide precautions. Ex. 2 (Diamond Dep. Tr.) at 228:8-229:19; *see also* Ex. 11 (Email re: Weekly Report) at DEF004811, Ex. 12 (June 11, 2020 Suicide Risk Assessment Instrument) at DEF_472 (listing "[r]ecent physical/sexual abuse in prison" as a recent stressor). Second, while Defendant may contest whether in fact Ms. Diamond injured herself, that merely makes that fact disputed. As such, it is for the trier of fact to decide, taking into account the credibility of the witnesses, and therefore may not be considered at the summary judgment stage. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

### C.   The PLRA Does Not Require Physical Injury for the Constitutional Violation of Invasion of Bodily Privacy

As discussed above, Ms. Diamond has clearly alleged physical injury. But even if Ms. Diamond had not alleged physical injury, she would still be legally entitled to compensatory damages for invasion of privacy. Invasion of privacy is a constitutional violation that is neither mental nor emotional in nature, therefore no showing of physical injury is required under the PLRA. *See Hoever*, 993 F.3d at 1358 ("the text of § 1997e(e) bars only requests for compensatory damages stemming from purely mental or emotional harms"); *Aref v. Lynch*, 833 F.3d 242, 262-67 (D.C. Cir. 2016) (describing differing views on this issue and explaining why reading of the

PLRA that allows compensatory damages for non-physical injuries that are neither mental nor emotional is correct).

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment should be DENIED.

Respectfully submitted,

May 31, 2022

/s/ A. Chinyere Ezie
A. Chinyere Ezie[*]
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
Phone/Fax: (212) 614-6467
Email: cezie@ccrjustice.org

Rafaela Uribe[*]
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
Phone/Fax: (212) 614-6483
Email: ruribe@ccrjustice.org

Elizabeth Littrell, Ga. Bar No. 454949
Southern Poverty Law Center
P.O. Box 1287
Decatur, GA 30031
Phone: (404) 221-5876
Fax: (404) 221-5857
Email: beth.littrell@splcenter.org

Scott D. McCoy[*]
Southern Poverty Law Center
P.O. Box 10788
Tallahassee, FL 32302
Phone: (334) 224-4309
Email: scott.mccoy@splcenter.org

[*] *Admitted Pro Hac Vice*

*Counsel for Plaintiff Ashley Diamond*

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, the foregoing document and all attachments were served on all counsel of record through the Court's CM/ECF system.

Dated: May 31, 2022                             /s/ A. Chinyere Ezie
                                                A. Chinyere Ezie, Esq.

                                                *Counsel for Plaintiff Ashley Diamond*